UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LLOYD MYERS,<br>Defendant. | Case No. 5:09-cr-01195-EJD-2<br><br>**ORDER DENYING DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE**<br>Re: Dkt. No. 219 |

Before the Court is Defendant Lloyd Myers's 28 U.S.C. § 2255 motion to vacate his sentence. Motion to Vacate ("Mot."), Dkt. 219. On June 14, 2019, the Government filed an answer replying to Defendant's motion. Answer to Defendant's Motion to Vacate ("Answer"), Dkt. 255. Defendant submitted a reply to this answer. Reply to United States Answer ("Reply"), Dkt. 258. Defendant argues his sentence should be vacated because his trial counsel was ineffective. However, because Defendant cannot show deficiency and prejudice, as required by *Strickland v. Washington*, 466 U.S. 668 (1984), Defendant's motion is **DENIED**.

## I. BACKGROUND

In 2003, Defendant and his brother-in-law, Rodney Hatfield, created Landmark Trading Company, LLC, to solicit investments and conduct financial transactions in the foreign currency exchange markets ("Forex" transactions). *United States v. Myers*, 804 F.3d 1246, 1250 (9th Cir. 2015). Landmark received over $3,000,000 from investors; the money was transferred into a Forex trading account, which Defendant controlled and operated. *Id.* Contrary to Defendant's representations to investors, Landmark never turned a profit. *Id.* To hide the losses, Defendant and Hatfield used new investors' funds to pay off earlier investors. *Id.*

Ultimately, in December 2009, Defendant was indicted on ten fraud-related charges stemming from his involvement in this Ponzi scheme. Indictment, Dkt. 1. Specifically, he was charged with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and nine counts of wire fraud, in violation of 18 U.S.C. § 1343. *Id.* After lengthy pretrial proceedings, Defendant requested, and the Government finally acquiesced, to a judge-led criminal settlement conference pursuant to the Northern District of California's Criminal Local Rule 11-1. *See* Dkt. 76, 149. Prior to this, Defendant actively sought to reach a plea deal with the Government. *Myers*, 804 F.3d at 1250. This Court referred the matter to Magistrate Judge Beeler to conduct a settlement conference. *See* Dkt. 76, 149.

On December 14, 2012, the parties took part in a five-hour settlement conference with Judge Beeler and reached a plea deal, which was subsequently memorialized in writing. *Myers*, 804 F.3d at 1251. Defendant agreed to plead guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Judgment at 2, Dkt. 130. The other nine counts were dismissed as part of the plea agreement. *Id.*

This Court held a change of plea hearing in February 2013. *See* Dkt. 92, 145. There, Defendant acknowledged that he waived his right to appeal his conviction and sentence and affirmed that his guilty plea was knowing and voluntary. Dkt. 145 at 10–26. He expressed satisfaction with the quality of his representation and confirmed that he was pleading guilty because he was guilty. *See id.* at 11–12 (Defendant stated that he was "satisfied with the services of his attorney" and that he was pleading guilty because he was guilty of the charges). After finding that Defendant knowingly, freely, and voluntarily waived his constitutional rights, the Court accepted the guilty plea. *Id.* at 25.

This Court sentenced Defendant on October 15, 2013 to 18 months imprisonment, a three year-term of supervised release, and a $100 special assessment. Judgment at 2. This was below the 24-month sentence recommend by Probation. Probation Presentencing Report at 31, Dkt. 115. Defendant appealed the sentence, arguing that the magistrate court's participation in the settlement conference, which led to the change of plea, violated Federal Rule of Criminal Procedure 11(c)(1).

Case No.: 5:09-cr-01195-EJD-2
<< ORDER DENYING DEFENDANT'S 2255 MOTION TO VACATE >>
2

*Myers*, 804 F.3d at 1251–52. The Ninth Circuit upheld the sentence, noting "[e]ven though the magistrate judge's participation in the settlement conference amounts to Rule 11(c)(1) error, there is no indication in the record that the magistrate judge's involvement caused Myers to plead guilty—to the contrary, that is the result Myers had long sought to achieve." *Id.* at 1257–58.

Defendant then filed this motion to vacate, essentially disputing his receipt of a custodial sentence. *See id.* 1–4. He argues that his Sixth Amendment right to effective assistance of counsel was violated when his counsel (Mr. Fuller): (1) misadvised him of the consequences of pleading guilty, (2) advised him that he could not file a motion to withdraw his plea, and (3) failed to file a motion to withdraw the plea. *Id.* at 1. Defendant alleges that on February 11, 2013, during the change of plea hearing, when this Court asked Defendant: "Other than the promises contained in the plea agreement, has anyone promised you anything if you plead guilty today?" and conferred with Mr. Fuller off the record, he answered "no" to this question because Mr. Fuller assured him the plea agreement guaranteed him a non-custodial sentence. Mot. at 3; Dkt. 145 at 12. He also alleges that on the day of sentencing, Mr. Fuller told him, for the first time, the Government recommended only a one-month departure for his cooperation and a custodial sentence. *Id.* Defendant argues he pled guilty because he thought the Government's sentence reduction recommendation would be more than one-month, resulting in a non-custodial sentence. *Id.* at 3, 6.

The Government argues that Defendant "knew all along what the significance of his guilty plea meant and that it carried no guarantee of a non-custodial sentence" and that Defendant cannot meet his burden under Section 2255. Answer at 1.

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2255 Motion

Section 2255 authorizes a prisoner to "move the court which imposed the sentence to vacate, set aside, or correct the sentence based on a violation of federal law." 28 U.S.C. 2255(a). Relief is limited to situations where "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or

Case No.: 5:09-cr-01195-EJD-2
<< ORDER DENYING DEFENDANT'S 2255 MOTION TO VACATE >>
3

that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.*; *see also United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). This motion may not be used as a second appeal. *Berry*, 624 F.3d Accordingly, defendant is barred from re-litigating claims in a habeas proceeding that have already been decided on direct appeal. *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) ("The law in this circuit is clear that when a motion has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion.").

If error on these grounds is found, then "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Following the submission of a Section 2255 motion, the court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* The court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Conclusory statements in a Section 2255 motion are "not enough to require a hearing." *United States v. Johnson*, 988 F.3d 941, 945 (9th Cir. 1993).

**B. Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, a convicted defendant must show:

1. His counsel's performance was "deficient"—his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.
2. This deficient performance caused "prejudice"—the errors were so serious as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

The inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. The defendant must show both deficiency and prejudice; if an insufficient showing is made for one, the court need not consider the other. *Id.* at 697.

In assessing trial counsel's performance, the court applies an objective standard of reasonableness—"whether counsel's performance was reasonable considering all the circumstances. *Id.* at 688. Review is "highly deferential" because a fair assessment of counsel's performance requires that every effort be made to eliminate the "distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Due to the difficulties inherent in this evaluation, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Defendant, thus, must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy" since "[t]here are countless ways to provide effective assistance in any given case." *Id.* Accordingly, counsel's judgments receive a "heavy measure of deference." *Id.* at 691.

Surmounting the *Strickland* standard is "never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

**III.  DISCUSSION**

Defendant seeks to vacate his sentence based on ineffective assistance of counsel, alleging that before his plea, Mr. Fuller (1) misadvised him of the consequences of pleading guilty, (2) advised him that he could not file a motion to withdraw the plea, and (3) failed to file a withdraw of the plea. Reply at 1.

**A. Deficiency**

To show deficient counsel, Defendant must show counsel made such "serious error[s]" that performance was "objectively unreasonable." *See Strickland*, 466 U.S. at 676, 688. The reasonableness of counsel's actions "may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. Defendant argues that he believed a non-custodial sentence was guaranteed by the plea deal, yet the extensive records of attorney-client correspondence suggests otherwise.

On January 13, 2013, one month before Defendant entered his change of plea, Mr. Fuller emailed Defendant to clear up "misapprehensions on [Defendant's] part" and any

Case No.: 5:09-cr-01195-EJD-2
<< ORDER DENYING DEFENDANT'S 2255 MOTION TO VACATE >>
5

"miscommunication[s]." *See* Ex. 1 to Cabrera Decl. at 136–39. In this email, Mr. Fuller wrote:

> First, your core concern and desire, is a binding plea agreement to home confinement, which is an agreement under Rule 11(c)(1)(C), or guarantee that you will not be sentence [sic] to any term of imprisonment. The government has *declined to offer you any such agreement*, and *I cannot, and have not made any such promise to you of home confinement*. The current agreement is under Rule 11(c)(1)(A) and 11(c)(1)(B), which means the agreement and guideline range is *not binding on the court*, as I have explained, whether it is to adjusted offense level 12 or 16. *This is specifically provided for in the agreement. It is not reasonable for you to expect that this case will resolve by way of a plea without exposing you to at least a risk of custody*. As discussed, in the settlement conference, the goal was to get you to an agreement that gave you the best chance to argue for home-confinement.

*Id.* at 136 (emphasis added).

Mr. Fuller further advised that he:

> [C]an't and won't make any guarantees regarding the extent of a 5k departure, and [his] inability to do so is specifically provided for in the terms of your cooperation agreement. I have negotiated numerous cooperation plea agreement, [sic] and there is *never any certainty about the extent of a departure*.

*Id.* at 137 (emphasis added).

Finally, Mr. Fuller expressed concern over Defendant's actions:

> To the larger point, your email makes me feel professionally uncomfortable. *I believe you are attempting to add conditions and or terms to your entry of a guilty plea that are not part of that agreement*, a side agreement if you will, in an attempt to **later claim that I and or the government made certain assurances to you**, in the event **that you should be sentenced to custody**.

*Id.* (emphasis added).

Again, these emails occurred *before* the change of plea in February 2013. *Compare id.* (date stamped January 13, 2013), *with* Dkt. 145 (Transcript of February 11, 2013 change of plea proceedings). These emails show Defendant's counsel was objectively reasonable: he informed Defendant about the law surrounding sentencing, corrected any misunderstandings in a clear manner, and made *no* guarantees about non-custodial sentencing (instead clarifying that this was unlikely). *Cf. Strickland*, 466 U.S. at 691 (noting that reasonableness of counsel's actions can be determined by defendant's statements or actions). Moreover, this Court extensively questioned

Defendant about the plea to ensure he understood what it meant to change his plea. Dkt. 145 at 9–25. The combination of Mr. Fuller's emails and this Court's examination show that Defendant pled guilty knowing that non-custodial sentencing was not guaranteed, and that Mr. Fuller did not lead him to believe it was.

There is no other indication in the record that Mr. Fuller led Defendant to believe non-custodial sentencing was guaranteed. For example, on December 17, 2012, Defendant wrote to Mr. Fuller that he saw "no advantage to plea bargaining to any time other than house arrest as I can get time by going to trial with the possibility of winning and get no time," because he is "a victim also" of the venture. Ex. 1 to Cabrera Decl. at 21. In response, Mr. Fuller wrote "[t]his is crazy talk. . . . The government will not offer us a binding cooperation agreement to home confinement. . . . That you too lost money is not a defense." *Id.* Finally, a full month before the change of plea, Mr. Fuller provided Defendant with documents put together by the Government for his plea agreement, which again made no guarantees of non-custodial sentencing. *Id.* at 44. This is further evidence that Defendant knowingly and voluntarily agreed to the plea bargain and that Mr. Fuller acted as a reasonable attorney because he kept Defendant fully informed.

To rebut these facts, Defendant points this Court toward Declarations filed with his petition to argue that he pled guilty only because he thought he was guaranteed a non-custodial sentence. This simply is not a reasonable belief—the emails recounted above occurred an entire month *before* the plea arrangement and explicitly informed Defendant that non-custodial sentencing was *not* guaranteed. Further, the actual outcome was favorable for Defendant. The fact that Defendant received a below-guideline sentence and a lenient sentence "suggest that his counsel's performance was not 'deficient.'" *Gutstein v. United States*, 1996 U.S. LEXIS 13092, at *2 (9th Cir. 1996) (quoting *De Roche v. United States*, 337 F.2d 606, 607 (9th Cir. 1964); *cf.* Ex. 1 to Cabrera Decl. at 125 (discussing sentencing options if the case went to trial and that a "guilty" verdict was "all but certain").

Defendant's final argument is that Mr. Fuller was deficient by not filing the motion to withdraw the plea as requested. Reply at 3. Defendant contends *per se* deficiency occurs if

Case No.: 5:09-cr-01195-EJD-2
<< ORDER DENYING DEFENDANT'S 2255 MOTION TO VACATE >>
7

defense counsel ignores requests to file a motion requested by the defendant. Reply at 3–4. Defendant cites *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018) to support this argument, arguing that a defense lawyer "has to go along with a client's refusal to admit guilt, even when the lawyer reasonably thinks admitting guilt is in the client's best interest." Reply at 4. *McCoy*, however, does not stand for such a broad principle. To the contrary, *McCoy* holds that the Sixth Amendment guarantees a criminal defendant the right to choose the objective of his defense and insist that counsel refrain from admitting guilt, even if counsel thinks confessing guilt is the best strategic choice. 138 S. Ct. at 1507–12. There, despite the defendant's repeated objections, counsel told the jury that the defendant was a killer because counsel believed this was the best strategic choice. *Id.* 1506–07. Because of the defendant's repeated objections and pre-trial disagreements over whether to confess guilt, the Court concluded the defendant's Sixth Amendment counsel right was violated. *Id.* at 1508.

In contrast, here, Defendant agreed to the plea deal—Mr. Fuller never "forced" Defendant to accept the plea deal. Indeed, this Court fully examined Defendant to ensure he voluntarily, knowingly, and intelligently accepted the plea deal. This is markedly different from *McCoy*; Defendant knew non-custodial sentencing was not guaranteed and confirmed that knowledge to this Court. Accordingly, considering the favorable sentencing outcome and the series of emails between Mr. Fuller and Defendant in which Mr. Fuller explained why the plea deal was advisable and the parameters of that deal, the decision not to withdraw the plea is exactly the type of "strategic choice" protected by *Strickland*.

**B. Prejudice**

This Court need not address prejudice because Defendant fails on deficiency. *Strickland*, 466 U.S. at 697. Briefly, the fact that Defendant was ultimately sentenced to only one count of a ten-count indictment for a below-guideline sentence shows he was not prejudiced by any alleged deficient counsel. *Id.* at 694. The Government made no promises of a more lenient sentence and Mr. Fuller informed him that a "not-guilty" sentence was nearly impossible. Thus, Defendant cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Id.* Rather, the evidence indicates that Defendant would never have secured a non-custodial sentence.

## IV. CONCLUSION

Defendant has not met his burden under *Strickland*. He has thus failed to state a claim upon which relief can be granted and an evidentiary hearing would be moot. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (holding that "bald assertions of ineffective assistance" did not entitle defendant to an evidentiary hearing). Accordingly, the Section 2255 Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 24, 2019

EDWARD J. DAVILA
United States District Judge